Colin M. Simpson, WSB # 5-2312
Larry B. Jones, WSB # 5-1847
BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C.
1135 14th Street
Cody, WY 82414
307-527-7891
307-527-7897 FAX
csimpson@burgsimpson.com
ljones@burgsimpson.com
*Attorneys for Plaintiff*

| | | |
|---|---|---|
| **STATE OF WYOMING** | ) | **IN THE DISTRICT COURT** |
| | )ss. | |
| **COUNTY OF SWEETWATER** | ) | **THIRD JUDICIAL DISTRICT** |

TIFFANY GRUETZMACHER,

    Plaintiff,

vs.

VAMAR INC., SAVIOL SAINT JEAN,
REY LOGISTICS, INC., OSVALDO
HERRERA PUPO, and AGUSTIN
SANCHEZ PAVON,

    Defendants.

Civil Action No. CV-23-244-L

FILED
DISTRICT COURT
THIRD JUDICIAL DISTRICT
SWEETWATER COUNTY WY

NOV 20 2023

DONNA LEE BOBAK
CLERK OF COURT
BY_____
DEPUTY CLERK

## COMPLAINT

COMES NOW Tiffany Gruetzmacher, by and through her undersigned counsel, and

brings her Complaint against Vamar Inc. (hereinafter Vamar), Saviol Saint Jean, Rey Logistics,

Inc. (hereinafter Rey Logistics), Osvaldo Herrera Pupo, and Agustin Sanchez Pavon. In support

of this Complaint, Plaintiff alleges the following.

### I.    PARTIES, JURISDICTION AND VENUE

1.    Tiffany Gruetzmacher is a resident of Carbon County, Wyoming.

2.    Defendant Vamar Inc. is a motor carrier incorporated in the State of Illinois with

its principal place of business in Illinois.

3.    Defendant Saviol Saint Jean a/k/a Saviol Saint Jean was employed by, an agent of,

or otherwise retained, hired or authorized to drive by Vamar and was at all relevant times acting in the course and scope of his employment with, under the direction and control of, and/or in an agency relationship with Vamar.

4.     Defendant Rey Logistics, Inc. is a motor carrier incorporated in Pennsylvania with its principal place of business in Pennsylvania.

5.     Defendant Osvaldo Herrera Pupo was employed by, a contractor of, an agent of, or otherwise retained, hired or authorized to drive by Rey Logistics and was at all relevant times acting in the course and scope of his employment with, under the direction and control of, and/or in an agency relationship with Rey Logistics.

6.     Agustin Sanchez Pavon is an individual.

7.     *Personal Jurisdiction.* This Court has personal jurisdiction over all Defendants because they were a cause of the personal injuries to Plaintiff Tiffany Gruetzmacher, in Sweetwater County, Wyoming.

8.     *Subject Matter Jurisdiction.* This Court has jurisdiction over the claims because the amounts in controversy as to each defendant for the personal injuries to Plaintiff Tiffany Gruetzmacher greatly exceed fifty thousand dollars ($50,000.00), exclusive of interest and costs.

9.     *Venue.* Venue is proper in this Court because the cause of action arose in Sweetwater County, Wyoming. Wyo. Stat. Ann. § 1-5-109.

10.     In compliance with Wyo. Stat. Ann. § 27-14-105(b), copies of this Complaint have been served, by certified mail, return receipt requested, on the Attorney General of the State of Wyoming and the Director of the Worker's Compensation Division, Department of Employment.

## II.     FACTS

11.     In the early morning hours of December 21, 2022, Pavon, Herrera Pupo, and Saint Jean were all driving westbound on I-80 in Sweetwater County, Wyoming.

12.     The roadway was icy.

13.     Pavon lost control of his pickup truck and utility trailer.

14.     The pickup and trailer jackknifed across Interstate 80 (hereinafter I-80) —the pickup itself rotated 180 degrees and was facing the wrong direction.

15.     At the same time, Herrera Pupo was operating Rey Logistics' semi-tractor and trailer westbound on I-80.

16.     Herrera Pupo crashed into Pavon's jackknifed pickup and trailer.

17.     Pavon's pickup turned an additional 90 degrees after the impact and came to a rest in the median.

18.     Rey Logistics' tractor and trailer came to a rest in the right-hand lane.

19.     Pavon's trailer came to a rest in front of Rey Logistics' tractor.

20.     Plaintiff Tiffany Gruetzmacher, an Emergency Medical Technician with Memorial Hospital of Carbon County Ambulance MS64, and another EMT, Tyeler Harris, were dispatched to the scene of the Pavon/Rey Logistics crash.

21.     When Tiffany Gruetzmacher and Tyeler Harris arrived on scene, they parked the ambulance in the left-hand lane with the emergency lights activated.

22.     Tiffany Gruetzmacher and Tyeler Harris then got out of the ambulance to attend those involved in the crash.

23.     Saint Jean, operating Vamar's semi-tractor and trailer, next approached the scene of the Pavon/Rey Logistics crash in the right-hand lane at a dangerous, high rate of speed, that was too fast for the conditions.

24.     Saint Jean did not apprehend the situation in front of him.

25.     Saint Jean drove Vamar's tractor and trailer from the right-hand lane into the left-

hand lane and then crashed into the parked ambulance and Tiffany Gruetzmacher and Tyeler Harris.

26.     Tiffany Gruetzmacher suffered serious and permanent injuries.

### III.     CLAIMS FOR RELIEF AGAINST VAMAR AND SAINT JEAN

### A. NEGLIGENCE AND VICARIOUS LIABILITY – SAINT JEAN AND VAMAR

27.     Plaintiff realleges the allegations above and below and incorporates them by reference.

28.     Saint Jean, as a commercial motor vehicle operator, is subject to the laws, rules and regulations set forth in the Federal Motor Carrier Safety Act (hereinafter FMCSA).

29.     Saint Jean had a duty to use reasonable care while operating Vamar's commercial motor vehicle.

30.     Saint Jean had a duty to use extreme caution when operating Vamar's commercial motor vehicle in hazardous conditions that adversely affected traction.

31.     Saint Jean had a duty to have the commercial motor vehicle he was driving under reasonable control.

32.     Saint Jean had a duty to keep a proper lookout for other people using the roadway.

33.     Saint Jean breached his duties when he failed to exercise extreme caution, failed to see what was open and apparent, failed to take notice of obvious dangers, and failed to stop before crashing into the parked ambulance and Tiffany Gruetzmacher and Tyeler Harris, among other acts and omissions.

34.     Saint Jean's breach of his duties was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

35.     As Saint Jean was acting within the course and scope of his employment and/or agency relationship with Vamar when he negligently caused Tiffany Gruetzmacher serious and permanent injuries, Vamar is vicariously liable for Saint Jean's negligence.

### B. NEGLIGENCE – VAMAR

36.     Plaintiff realleges the allegations above and below and incorporates them by reference.

37.     Vamar dispatched, or otherwise directed, Saint Jean to drive its semi-truck and trailer through Wyoming.

38.     Vamar had a duty to use ordinary care in its operations.

39.     Vamar, as a motor carrier, is subject to the laws, rules and regulations set forth in the FMCSA.

40.     Vamar had a duty to the public to avoid knowingly placing its commercial truck drivers in hazardous or unsafe conditions which would pose a foreseeable risk of serious injury or death to others, including Tiffany Gruetzmacher.

41.     Vamar knew or should have known that weather conditions along the I-80 corridor on the day of the accident were poor with accumulated ice on the road.

42.     Vamar breached its and/or their duty to use ordinary care.

43.     Vamar's breach of its and/or their duty to use ordinary care was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

### C. NEGLIGENT HIRING AND RETENTION – VAMAR

44.     Plaintiff realleges the allegations above and below and incorporates them by reference.

45.     Vamar had a duty to exercise ordinary care when it hired and retained Saint Jean.

46.     Vamar breached its duty of ordinary care when it hired Saint Jean.

47.     Vamar breached its duty of ordinary care when it retained Saint Jean.

48.     Vamar's breaches of its duties of ordinary care when it hired and/or retained Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

### D. NEGLIGENT TRAINING – VAMAR

49.     Plaintiff realleges the allegations above and below and incorporates them by reference.

50.     Vamar had a duty to exercise due care in designing a training program that would train its driver to use reasonable care while operating a commercial motor vehicle, to use extreme caution when operating a commercial motor vehicle in hazardous conditions that adversely affected traction, to have a commercial motor vehicle under reasonable control, and to keep a proper lookout for other persons using the roadway.

51.     Vamar breached its duty to train Saint Jean.

52.     Vamar's breach of its duty to train Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

### E. NEGLIGENT ENTRUSTMENT – VAMAR

53.     Plaintiff realleges the allegations above and below and incorporates them by reference.

54.     Vamar supplied, directly or through a third person, the commercial motor vehicle Saint Jean was operating.

55.     Vamar knew or had reason to know that Saint Jean was likely to use the commercial motor vehicle in a manner involving an unreasonable risk of physical harm to others whom Vamar should expect to be endangered by its use.

56.     Vamar's negligent entrustment of the commercial motor vehicle to Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

## F.  NEGLIGENT SUPERVISION – VAMAR

57.     Plaintiff realleges the allegations above and below and incorporates them by reference.

58.     In the alternative, if Saint Jean was not acting within the course and scope of his employment and/or agency relationship with Vamar, then Plaintiff alleges that Vamar had a duty to control Saint Jean to prevent him from conducting himself so as to create an unreasonable risk of bodily harm to Tiffany Gruetzmacher.

59.     Saint Jean was using a chattel of Vamar, namely the commercial motor vehicle leased to and/or owned by Vamar.

60.     Vamar knew, or had reason to know, that it had the ability to supervise and control Saint Jean.

61.     Vamar knew, or should have known, of the necessity and opportunity for exercising such supervision and control over Saint Jean.

62.     Vamar's breach of its duty to supervise and control Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

## G.  EXEMPLARY DAMAGES – SAINT JEAN AND VAMAR

63.     Plaintiff realleges the allegations above and below and incorporates them by reference.

64.     Under Wyoming law, "[w]henever the death of a person is caused by wrongful act, neglect or default," Wyo. Stat. Ann. § 1-38-101, "[t]he court or jury, as the case may be, may award such damages, pecuniary and exemplary, as shall be deemed fair and just." Wyo. Stat. Ann. § 1-38-101 (emphasis added).

65.     Saint Jean intentionally acted, or an intentionally failed to do an act, in reckless disregard of the consequences, and under such circumstances and conditions that a reasonable person would know, or have reason to know, that such conduct would, with a high degree of probability, result in harm to another.

66.     Saint Jean's willful and wanton misconduct was a direct and proximate cause of and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

67.     Saint Jean was unfit to drive Vamar's semi-tractor and trailer, and Vamar was reckless in employing or retaining him to do so.

68.     Vamar, or a managerial agent of Vamar, authorized, approved of, or ratified the manner in which Saint Jean operated the semi-tractor and trailer.

69.     In the alternative, Saint Jean was a manager of Vamar and was acting within the course and scope of his employment when he was a direct and proximate cause of and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

70.     As a result of the above, Vamar is liable for Saint Jean's willful and wanton misconduct and for its own willful and wanton misconduct.

IV.    **CLAIMS FOR RELIEF AGAINST REY LOGISTICS AND HERRERA PUPO**

A.    **NEGLIGENCE AND VICARIOUS LIABILITY – HERRERA  PUPO AND REY LOGISTICS**

71.    Plaintiff realleges the allegations above and below and incorporates them by reference.

72.    Herrera Pupo, as a commercial motor vehicle operator, is subject to the laws, rules and regulations set forth in the FMCSA.

73.    Herrera Pupo had a duty to use reasonable care while operating a commercial motor vehicle.

74.    Herrera Pupo had a duty to use extreme caution when operating Rey Logistics' commercial motor vehicle in hazardous conditions that adversely affected traction.

75.    Herrera Pupo had a duty to have the commercial motor vehicle he was driving under reasonable control.

76.    Herrera Pupo had a duty to keep a proper lookout for other people using the roadway.

77.    Herrera Pupo breached his duties when he failed to exercise extreme caution, failed to see what was open and apparent, failed to take notice of obvious dangers, and failed to stop before striking the jackknifed pickup truck and utility trailer, among other acts and omissions.

78.    Herrera Pupo's breach of his duties created a reasonably foreseeable increased risk of injury to Tiffany Gruetzmacher.

79.    Herrera Pupo's breach of his duties was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

80.    As Herrera Pupo was acting within the course and scope of his employment and/or

agency relationship with Rey Logistics, Rey Logistics is vicariously liable for its driver's negligence.

### B.   NEGLIGENCE – REY LOGISTICS

81.   Plaintiff realleges the allegations above and below and incorporates them by reference.

82.   Rey Logistics dispatched, or otherwise directed, Herrera Pupo to drive its semi-truck and trailer through Wyoming.

83.   Rey Logistics had a duty to use ordinary care in its operations.

84.   Rey Logistics, as a motor carrier, is subject to the laws, rules and regulations set forth in the FMCSA.

85.   Rey Logistics has a duty to the public to avoid knowingly placing its commercial truck drivers in hazardous or unsafe conditions which would pose a foreseeable risk of serious injury or death to others, including Tiffany Gruetzmacher.

86.   Rey Logistics knew or should have known that weather conditions along the I-80 corridor on the day of the accident were poor with accumulated ice on the road.

87.   Rey Logistics breached its and/or their duty to use ordinary care.

88.   Rey Logistics' breach of its and/or their duty to use ordinary care was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

### C.   NEGLIGENT HIRING AND RETENTION – REY LOGISTICS

89.   Plaintiff realleges the allegations above and below and incorporates them by reference.

90.   Rey Logistics had a duty to exercise ordinary care when it hired and retained

Herrera Pupo.

91.     Rey Logistics breached its duty of ordinary care when it hired Herrera Pupo.

92.     Rey Logistics breached its duty of ordinary care when it retained Herrera Pupo.

93.     Rey Logistics' breaches of its duties of ordinary care when it hired and/or retained Herrera Pupo was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

### D.     NEGLIGENT TRAINING – REY LOGISTICS

94.     Plaintiff realleges the allegations above and below and incorporates them by reference.

95.     Rey Logistics had a duty to exercise due care in designing a training program that would train its driver to use reasonable care while operating a commercial motor vehicle, to use extreme caution when operating a commercial motor vehicle in hazardous conditions that adversely affected traction, to have a commercial motor vehicle under reasonable control, and to keep a proper lookout for other persons using the roadway.

96.     Rey Logistics' breach of its duty to train Herrera Pupo was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

### E.     NEGLIGENT ENTRUSTMENT – REY LOGISTICS

97.     Plaintiff realleges the allegations above and below and incorporates them by reference.

98.     Rey Logistics supplied, directly or through a third person, the commercial motor vehicle Herrera Pupo was operating.

99.     Rey Logistics knew or had reason to know that Herrera Pupo was likely to use the

commercial motor vehicle in a manner involving an unreasonable risk of physical harm to others whom Rey Logistics should expect to be endangered by its use.

100.     Rey Logistics' negligent entrustment of the commercial motor vehicle to Herrera Pupo was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

### F.     NEGLIGENT SUPERVISION – REY LOGISTICS

101.     Plaintiff realleges the allegations above and below and incorporates them by reference.

102.     In the alternative, if Herrera Pupo was not acting within the course and scope of his employment and/or agency relationship with Rey Logistics, then Plaintiff alleges that Rey Logistics had a duty to control Herrera Pupo to prevent him from conducting himself so as to create an unreasonable risk of bodily harm to Tiffany Gruetzmacher.

103.     Herrera Pupo was using a chattel of Rey Logistics, namely the commercial motor vehicle leased to and/or owned by Rey Logistics.

104.     Rey Logistics knew, or had reason to know, that it had the ability to supervise and control Herrera Pupo.

105.     Rey Logistics knew, or should have known, of the necessity and opportunity for exercising such supervision and control over Herrera Pupo.

106.     Rey Logistics' breach of its duty to supervise and control Herrera Pupo was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

### V.     CLAIM FOR RELIEF AGAINST PAVON

107.     Plaintiff realleges the allegations above and below and incorporates them by

reference.

108.   Pavon had a duty to use reasonable care while operating a motor vehicle.

109.   Pavon had a duty to have the motor vehicle he was driving under reasonable control.

110.   Pavon breached his duties when he lost control of his pickup truck and utility trailer, among other acts and omissions.

111.   Pavon's breach of his duties created a reasonably foreseeable increased risk of injury to Tiffany Gruetzmacher.

112.   Pavon's breach of his duties was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

## VI.   DAMAGES

113.   Plaintiff realleges the allegations above and below and incorporate them by reference.

114.   As a result of the defendants' conduct, Tiffany Gruetzmacher is entitled to recover damages for her serious and permanent injuries, including but not limited to a moderate brain injury, lower lumbar injury, right wrist fracture, impaired swallow, daily headaches, anxiety, depression. vertigo, occipital bone fracture, left arm motor apraxia, severe emotional distress and post-traumatic stress.

115.   As a result of Saint Jean and Vamar's willful and wanton misconduct, Tiffany Gruetzmacher is entitled to recover exemplary damages from Saint Jean and Vamar.

116.   As the sole, direct and proximate result of Defendants' actions and inactions, as more fully set forth above, and Defendants being jointly and severally liable for the same, Plaintiff

Tiffany Gruetzmacher has suffered damages in the following particulars:

    a.  Actual, special, and compensatory damages to Plaintiff Tiffany Gruetzmacher, including but not limited to:

        i.  Past, present and future, temporary and permanent pain, suffering, disfigurement, scarring, nervous shock, emotional distress, embarrassment, and loss of enjoyment of life;

        ii.  Past, present and future loss of physical functioning;

        iii.  Past, present and future, temporary and permanent loss of earnings and damages for impaired earning capacity;

        iv.  Medical expenses, past, present and future, according to proof at the time of trial;

        v.  Permanent scarring and disfigurement; and

        vi.  Other pecuniary losses to Plaintiff Tiffany Gruetzmacher arising out of the injuries suffered by Plaintiff Tiffany Gruetzmacher in an amount to be proven at trial.

    b.  exemplary damages from Saint Jean and Vamar;

    c.  For costs of suit incurred herein;

    d.  For pre-judgment and post-judgment interest as provided by law; and

    e.  For such other and further relief as the Court may deem just and proper including injunctive, restitutionary and other equitable relief.

WHEREFORE, Plaintiff Tiffany Gruetzmacher prays for judgment against the Defendants, individually, collectively, jointly and strictly liable, as follows, as appropriate to each cause of action alleged, damages for:

    a. Actual, special, and compensatory damages to Plaintiff Tiffany Gruetzmacher, including but not limited to:

        i. Past, present and future, temporary and permanent pain, suffering, disfigurement, scarring, nervous shock, emotional distress, embarrassment, and loss of enjoyment of life;

        ii. Past, present and future loss of physical functioning;

        iii. Past, present and future, temporary and permanent loss of earnings and damages for impaired earning capacity;

        iv. Medical expenses, past, present and future, according to proof at the time of trial;

        v. Permanent scarring and disfigurement; and

        vi. Other pecuniary losses to Plaintiff Tiffany Gruetzmacher arising out of the injuries suffered by Plaintiff Tiffany Gruetzmacher in an amount to be proven at trial.

    b. exemplary damages from Saint Jean and Vamar;

    c. For costs of suit incurred herein;

    d. For pre-judgment and post-judgment interest as provided by law; and

    e. For such other and further relief as the Court may deem just and proper including injunctive, restitutionary and other equitable relief.

DATED this 17th day of November, 2023.

Colin M. Simpson, W.S.B. #5-2312
Larry B. Jones, W.S.B. #5-1847
BURG SIMPSON ELDREDGE HERSH &

JARDINE, P.C.
1135 14TH Street
Cody, WY 82414
307-527-7891 Phone
307-527-7897 Fax
csimpson@burgsimpson.com
ljones@burgsimpson.com
*ATTORNEYS FOR PLAINTIFF*
*Tiffany Gruetzmacher*